***********
This matter was reviewed by the Full Commission based upon the record of the proceedings before Deputy Commissioner Holmes, along with the briefs and arguments on appeal. Accordingly, the Full Commission AFFIRMS IN PART AND REVERSES IN PART the Deputy Commissioner's holding and enters the following Opinion and Award.
 ***********
By agreement of the parties at the Full Commission oral argument, a package of vocational records is hereby RECEIVED INTO EVIDENCE.
 ***********
The undersigned finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy as:
 STIPULATIONS
1. Employee-Plaintiff is Richard Lucas.
2. Employer is LL Building Products.
3. Crawford Company is the carrier on this claim.
4. Defendant-Employer regularly employees three (3) or more employees and is bound by the provisions of the North Carolina Workers' Compensation Act.
5. The Industrial Commission has jurisdiction over the parties and all parties have been properly named in this action.
6. On March 26, 2002, the plaintiff sustained an injury by accident.
 ***********
Based upon all the evidence adduced from the record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. The plaintiff worked as the lead maintenance man for the Employer-Defendant. On 26 March 2002, the plaintiff sustained an injury by accident in which he severely lacerated his right index and long fingers.
2. After an investigation of the 26 March 2002 incident, the plaintiff was terminated on April 2, 2002. The plaintiff was terminated for cause for failure to adhere to an established safety procedure.
3. Plaintiff saw Dr. Bahner on 28 March 2002. Dr. Bahner determined that surgery was necessary and that plaintiff would be out of work for an extended period. Dr. Bahner performed the surgery on 1 April 2002.
4. Plaintiff continued to see Dr. Bahmer and on 19 April 2002 the plaintiff saw Dr. Scully in Dr. Bahmer's office. Dr. Scully performed a debridement of the devitalized tissue and prescribed antibiotics. On 22 April 2002 Dr. Bahmer noted purulent material draining from a large flap avulsion as well as swelling. Dr. Bahmer recommended that plaintiff go to the hospital for IV antibiotics and possible operative debridement. On 24 April 2002 plaintiff had a debridement and tenolysis of the flexor tendon.
5. Plaintiff continued to see Dr. Bahner due to many complications of his hand conditions. Plaintiff attended dozens of therapy sessions. Additional surgery took place on 20 November 2002 to debride plaintiff's volar flap on his right long finger.
6. Plaintiff continued with numerous physical therapy sessions. On 9 December 2002 Physician's Assistant Eric Carter noted that plaintiff was experiencing significant pain during the sessions.
7. While continuing his hand treatment, in December of 2002 and January of 2003 the plaintiff attempted on his own to learn how to operate a tow truck. Plaintiff was contemplating buying a towing business to own and run himself if he could perform the physical tasks required in that trade. The owners of AOK Towing were trying to sell their business, and attempted to teach plaintiff to execute the tasks required in the towing business. The plaintiff rode in the truck in order to learn the physical as well as the business aspects of AOK Towing. To that end the plaintiff often went inside to see clients and handle the paperwork involved with tows. The plaintiff never received any wages whatsoever from AOK towing.
8. The plaintiff lacked the hand strength to secure cars to a tow truck. A car plaintiff attempted to secure became loose and fell off of the truck as he was towing it. Plaintiff abandoned the idea of owning and running a towing business due to his inability to perform the necessary physical tasks with his right hand. The defendants submitted no evidence that plaintiff earned any wages from AOK Towing.
9. Plaintiff had a functional capacity evaluation on 24 June 2003 with Dr. Bahner. Dr. Bahner testified that depending on the activity required it would be difficult for plaintiff to use his injured hand at work, and that the plaintiff had lost grip strength and sensation in his long finger. Dr. Bahner assigned the plaintiff's right hand a 24% impairment rating.
10. Defendants started vocational services on 30 August 2003, but these services proved not to be fruitful. The defendants closed the vocational file on plaintiff on 16 January 2004. The vocational professional wrote in the 13 January 2004 report that the plaintiff completed a keyboarding class, had a strong work ethic, was motivated to return to work, and followed up on all job leads. Plaintiff was unable to find suitable employment.
11. The defendants named several jobs that plaintiff could possibly perform for defendant-employer. However, Mr. Redwine, the employer's safety coordinator, testified on cross-examination that none of these jobs were ever offered to plaintiff and that none were available at the time of the hearing before the Deputy Commissioner.
12. Medical treatment to Plaintiff's hand as a result of his March 26, 2002 injury by accident was necessary to effect a cure, give relief and did tend to lessen Plaintiff's period of disability.
13. The termination of indemnity benefits pursuant to the Form 24 was improvidently granted by the Special Deputy Commissioner.
14. The plaintiff's average weekly wage was calculated incorrectly by the Deputy Commissioner in that the plaintiff's overtime was not included. The plaintiff's pertinent average weekly wage was $806.68, which yields a weekly compensation rate of $537.81.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. The plaintiff sustained a compensable injury by accident on March 26, 2002. N.C. Gen. Stat. § 97-2(6).
2. The plaintiff's pertinent average weekly wage was $806.68, which yields a weekly compensation rate of $537.81. N.C. Gen. Stat. § 97-2(5).
3. The Form 24 Application filed 14 January 2004 was improvidently granted by the Special Deputy Commissioner.
4. Plaintiff is entitled to temporary total disability payments at a rate of $537.81 per week from 27 March 2002 and continuing until further order of the Commission. The plaintiff is also entitled to any underpayment of indemnity benefits due to the miscalculation of the plaintiff's average weekly wage. N.C. Gen. Stat. §§ 97-29, 97-2(5).
5. Plaintiff's medical treatment as a result of his injury by accident of March 26, 2002 was necessary to effect a cure, give relief and did tend to lessen plaintiff's period of disability. Medical treatment related to the compensable injury should be provided by the defendants. N.C. Gen. Stat. §97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. The defendants shall pay plaintiff $537.81 per week from 27 March 2002 and continuing until further order of the Commission. Defendants also shall pay plaintiff any underpayment of indemnity benefits due to the miscalculation of the plaintiff's average weekly wage.
2. Defendants shall provide all medical care reasonably related to plaintiff's compensable injury by accident.
3. A reasonable attorneys fee in the amount of twenty-five percent of the compensation awarded plaintiff under this opinion and award is approved for plaintiff's counsel. Twenty-five percent of the accrued amount shall be deducted from that sum and paid directly to plaintiff's counsel. Thereafter, every fourth check shall be sent directly to plaintiff's counsel.
4. The parties shall share the costs of this appeal.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/_____________ PAMELA T. YOUNG COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER